CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
March 09, 2026
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **CHRISTIAN THOMAS NEALSON,** ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **INTEL OFFICER C. COLE, et al.,** ) <br> Defendants. ) | Case No. 7:24-cv-00799 <br><br> By: Michael F. Urbanski <br> Senior United States District Judge |

## MEMORANDUM OPINION

Christian Thomas Nealson, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against two correctional officials at Keen Mountain Correctional Center (KMCC), Intel Officer C. Cole and Intel Officer Morris. The case is presently before the court on the defendants' motion to dismiss. ECF No. 17. For the reasons set forth below, the motion is **GRANTED IN PART AND DENIED IN PART**.

### I. Background

The following factual allegations are taken from the complaint and additional written materials filed by Nealson. See Holley v. Combs, 134 F.4th 142, 144 (4th Cir. 2025) ("In order to determine whether the claim of a pro se plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff.") (internal quotation marks and brackets omitted). The factual allegations are accepted as true for purposes of ruling on the motion to dismiss. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

At the time of the events giving rise to this action, Nealson was housed in a segregation unit at KMCC. Compl., ECF No. 1, at 4. At approximately 1:00 p.m. on May 28, 2024, Cole and Morris entered the housing unit and searched Nealson's property that was stored in a locker away from his cell. The property included five notebooks and a folder labeled "Legal Documents" and "Court Cases." Id.; see also Pl.'s Resp. Mot. Dismiss, ECF No. 26, at 1. The folder contained paperwork pertaining to another civil action brought by Nealson against current and former employees of the Virginia Department of Corrections (VDOC), Nealson v. Keene, No. 7:23-cv-00442 (W.D. Va.). The paperwork included a copy of a notice of declination of service submitted by an attorney from the Office of the Attorney General of Virginia (OAG), which listed a former correctional officer's full name and home address. Compl. at 5. Nealson alleges that Cole reviewed the legal documents and showed them to Morris. After asking Nealson about the notice of declination of service that had been sent to him by the OAG, Cole and Morris left the housing unit with the notice and Nealson's five notebooks. Id. Nealson alleges that two of the notebooks contained names and addresses that he had received by mail from the OAG and a former correctional officer himself. Pl.'s Resp. Mot. Dismiss at 2; see also Compl. at 7 ("I ended up receiving two former officers' names and addresses by the Attorney General's Office and from [another defendant] himself thru the prison mail room.").

Cole subsequently charged Nealson with VDOC Offense Code 142, "Possession of Personal Information," even though the information at issue had been received in connection

2

with court proceedings from the OAG and a former correctional officer.* Compl. at 6. Although the disciplinary charge was ultimately dismissed, "the five notebooks/journals were never returned" to Nealson as required by policy. Id. at 8. Nealson alleges that one of the notebooks contained "case notes for a court case" and that he was "set . . . back" by not having access to them. Pl.'s Resp. Mot. Dismiss at 4.

Nealson claims that Cole and Morris violated his rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment by (1) reviewing the legal documents outside of his presence, (2) confiscating his notebooks, and (3) charging him with a disciplinary offense based on information provided to him during the course of pending court proceedings. He seeks monetary damages and "the return of [his] five journals/notebooks." Compl. at 2.

## II.    Standard of Review

The defendants have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when

---

* Offense Code 142 prohibits the possession of "[p]ersonal information concerning former or currently employed staff . . . not voluntarily given to the inmate by the individual involved," including "unpublished home addresses." VDOC Operating Procedure 861.1 Attachment 2 (eff. Sept. 1, 2023) (emphasis added), available at https://vadoc.virginia.gov/files/operating-procedures/800/vadoc-op-861-1-a2.pdf (last accessed Mar. 4, 2026).

3

the plaintiff's factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

A complaint filed by a pro se litigant must be construed liberally. King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of pro se complaints are not, however, without limits." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). Pro se litigants still must allege sufficient facts to state a plausible claim for relief. Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016).

### III.   Discussion

Nealson filed suit against Cole and Morris under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

**A.   Legal Mail**

Nealson claims that the defendants violated the First Amendment by reviewing the legal documents that had been mailed to him outside of his presence. "The First Amendment, as incorporated through the Fourteenth Amendment, prohibits States from 'abridging the freedom of speech.'" Haze v. Harrison, 961 F.3d 654, 658 (4th Cir. 2020) (quoting U.S. Const. amend. I). This proscription extends to restrictions that directly burden speech, as well as government actions that have indirect chilling effects. Id. The United States Court of Appeals

4

for the Fourth Circuit has recognized that "[o]pening an incarcerated person's legal mail outside of his presence can chill protected speech." Id. However, isolated incidents of legal mail being opened outside the presence of an inmate do not rise to the level of a constitutional violation. See Buie v. Jones, 717 F.2d 925, 926 (4th Cir. 1983) (holding that "a few isolated instances of plaintiff's mail being opened outside of his presence" in violation of a jail policy "were not of constitutional magnitude"); see also Gibson v. Erickson, 830 F. App'x 372, 373 (3d Cir. 2020) (explaining that "while a pattern or practice of opening legal mail outside the presence of an inmate is sufficient to state a First Amendment violation, a single instance is usually not enough") (internal quotation marks and citations omitted); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (noting that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation" and that inmates "must show that prison officials regularly and unjustifiably interfered with [their] legal mail") (internal quotation marks omitted).

      Nealson's complaint describes a single incident during which officers searched his property, which included information sent to him through the mail in connection with pending court proceedings. Nealson does not allege that either defendant engaged in a "deliberate pattern or practice" of tampering with his legal mail or opening it outside of his presence. See Haze, 961 F.3d at 659 (holding that a reasonable jury could find that the defendants engaged in a deliberate pattern or practice where the plaintiff identified "fifteen instances of interference with his legal mail," seven of which involved mail being opened, copied, and forwarded to the District Attorney's office). The court agrees with the defendants that the

5

mere inspection of Nealson's case-related documents on a single occasion does not rise to the level of a First Amendment violation.

**B.    Access to Courts**

Nealson also appears to allege that the defendants violated his right to access the courts by confiscating the notebooks containing case-related information. State inmates "have a constitutionally protected right of access to the courts that is rooted in the Petition Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment." DeMarco v. Davis, 914 F.3d 383, 387 (5th Cir. 2019) (internal quotation marks omitted); see also Pink v. Lester, 52 F.3d 73, 76 (4th Cir. 1995). Because "meaningful access to the courts is the touchstone," an inmate must plead facts showing that he suffered an "actual injury" as a result of the denial of access. Lewis v. Casey, 518 U.S. 343, 351 (1996) (internal quotation marks omitted). In particular, an inmate "must show that he lost or will lose the opportunity to pursue a 'nonfrivolous' and 'arguable' claim." Pronin v. Johnson, 628 F. App'x 160, 162 (4th Cir. 2015) (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)); see also Jackson v. City of Cleveland, 64 F.4th 736, 746 (6th Cir. 2023) (identifying "having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline as some examples of actual prejudice to pending or contemplated litigation) (internal quotation marks omitted). The underlying cause of action must be "described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Harbury, 536 U.S. at 416.

6

Nealson's complaint fails to set forth sufficient facts to satisfy the "actual injury" requirement. Although he alleges that he was "set back" by not having access to the case-related information in his notebooks, he does not identify any nonfrivolous claim that was adversely affected by the defendants' actions. Nor does he allege that he missed a deadline or suffered any other actual prejudice to pending or contemplated litigation as a result of not having access to his notebooks. Consequently, the complaint fails to state a claim for denial of access to the courts.

**C.    Deprivation of Property**

Nealson next asserts that he was deprived of his notebooks without due process. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015).

Nealson has not plausibly alleged he was deprived of his property without due process. Although due process generally requires an opportunity to be heard prior to the deprivation of a property interest, it is well established that a pre-deprivation hearing is not required in all circumstances. See Zinermon v. Burch, 494 U.S. 113, 127-28 (1990). For instance, the Supreme Court has held that "a state actor's unauthorized deprivation of an inmate's [property] 'does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.'" Hawes v. Stephens, 964 F.3d 412, 418 (5th Cir. 2020) (quoting Hudson v. Palmer, 468 U.S.

7

517, 533 (1993)). Under the Virginia Tort Claims Act (VTCA), the Commonwealth of Virginia is liable for claims for damages resulting from "damage to or loss of property . . . caused by the negligent or wrongful act or omission of any [state] employee while acting within the scope of his employment." Va. Code Ann. § 8.01-195.3. The United States Court of Appeals for the Fourth Circuit has held that the VTCA and Virginia tort law provide adequate post-deprivation remedies for torts committed by state employees. See Wadhams v. Procunier, 772 F.2d 75, 78 (4th Cir. 1985). Because adequate remedies are available under state law for the unauthorized deprivation of personal property by a state prison official, Nealson has no viable due process claim stemming from the confiscation of his notebooks.

D.    **Retaliation**

Nealson's final claim is that the defendants unlawfully retaliated against him for filing lawsuits. Although retaliation is not specifically referenced in the Constitution, it "is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." ACLU, Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). As relevant here, prison officials may not retaliate against an inmate for exercising his First Amendment right to access the courts. Hudspeth v. Figgins, 584 F.2d 1345, 1347–48 (4th Cir. 1978).

In order to state a colorable First Amendment retaliation claim, a plaintiff must allege facts sufficient to satisfy three elements: (1) that he engaged in activity protected by the First Amendment; (2) that the defendant took some action that would likely deter a person of ordinary firmness from exercising his First Amendment rights; and (3) that there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 858

8

F.3d 239, 249 (4th Cir. 2017). Here, it is undisputed that Nealson engaged in protected activity by filing lawsuits. The court therefore focuses on the second and third elements.

To satisfy the second element, "a plaintiff must show that a defendant's conduct resulted in more than a de minimis inconvenience to the exercise of the plaintiff's rights; rather it must chill the exercise of such rights such that it would deter 'a person of ordinary firmness' from exercise in the future." Williams v. Mitchell, 122 F.4th 85, 89 (4th Cir. 2024) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005)). "This objective inquiry examines the specific facts of each case, taking into account the actors involved and their relationship," Booker v. S.C. Dep't of Corr., 583 F. App'x 43, 44 (4th Cir. 2014), as well as "the nature of the retaliatory acts," Williams, 122 F.4th at 90 (internal quotation marks omitted). "While the defendant's conduct must chill the exercise of a constitutional right, the conduct need not constitute a constitutional violation in itself." Id.

The third element of a retaliation claim requires the plaintiff to show that "there was a causal relationship between his protected activity and the defendant's conduct." Id. at 89. To satisfy this element, "a plaintiff must show 'at the very least that the defendant was aware of plaintiff's engaging in protected activity,' and 'some degree of temporal proximity.'" Id. (brackets omitted) (quoting Constantine, 411 F.3d 474, 501); see also Shaw v. Foreman, 59 F.4th 121, 131 (4th Cir. 2023) (emphasizing that close temporal proximity between protected activity and an adverse action "may support an inference of causation") (internal quotation marks omitted).

Viewing the factual allegations in the light most favorable to Nealson, the court concludes that the allegations are sufficient to satisfy the second and third elements. Nealson

alleges that the defendants confiscated his five personal notebooks and wrongfully pursued a disciplinary charge against him immediately after reviewing a document filed in one of his pending lawsuits against correctional officers. Courts have recognized that "confiscating an inmate's legal papers and other property constitutes a sufficient injury to support a First Amendment retaliation claim." Bell v. Johnson, 308 F.3d 594, 604–05 (6th Cir. 2002) (collecting cases and holding that the confiscation of an inmate's legal papers satisfied the adverse action element); see also Jackson v. Carter, 813 F. App'x 820, 825 (3d Cir. 2020) (noting that "discarding an inmate's personal and legal property could be considered an 'adverse action'"). Courts have also recognized that "[a]n allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right . . . states a claim under § 1983." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 544 (4th Cir. 2017) (quoting Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002)); see also Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (explaining that "the filing of a disciplinary charge becomes actionable if done in retaliation for the [exercise of a First Amendment right]"). While the defendants may be able to show at summary judgment that they had valid, nonretaliatory reasons for confiscating Nealson's notebooks and pursuing the disciplinary charge that was ultimately dismissed, Nealson's allegations are sufficient to state a claim of retaliation at this stage of the proceedings. Accordingly, the defendants' motion will be denied with respect to this claim.

## IV. Conclusion

For the reasons stated, the defendants' motion to dismiss under Rule 12(b)(6), ECF No. 17, is **GRANTED IN PART AND DENIED IN PART**. An appropriate order will be entered.

Entered: March 9, 2026

Michael F. Urbanski
U.S. District Judge
2026.03.09 13:02:52
-04'00'

Michael F. Urbanski
Senior United States District Judge